**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Kwabena Amoah,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil No. 15-cv-0475 (APM)** |
| v. ) | |
| ) | |
| **Paragon Systems, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

The outcome of this case turns on a discrete question:  Was Plaintiff Kwabena Amoah subject to the dispute resolution terms of a collective bargaining agreement, even though he denies membership in the union with whom his employer negotiated the agreement?  If the answer is "yes," Plaintiff's lawsuit must be dismissed because the collective bargaining agreement required that he first file a grievance with his employer, which he did not do.  If the answer is "no," Plaintiff may proceed with his suit, albeit not in this court.

The court concludes that, by its plain terms, the collective bargaining agreement applied to Plaintiff, even if he was not a union member.  Therefore, Plaintiff was required to follow the grievance process provided in the collective bargaining agreement.  Because he failed to follow that process, the court must enter judgment in favor of his employer, Defendant Paragon Systems, Inc.

## II.     BACKGROUND

### A.     Factual History

The following facts are described in the light most favorable to the non-movant, Plaintiff Kwabena Amoah. On November 10, 2012, Plaintiff began his employment as a security officer for Defendant Paragon Systems, Inc. ("Paragon"). Notice of Removal, ECF No. 1, Ex. A, Compl., ECF No. 1-2 [hereinafter Compl.], ¶ 1; Def.'s Mot. to Dismiss, ECF No. 4, Ex. 1, Decl. of Ilene Reiter, ECF No. 4-2 [hereinafter Reiter Decl.], ¶ 5; Reiter Decl., Ex. B, ECF No. 4-4. Plaintiff was assigned to work at 950 L'Enfant Plaza in Washington, D.C., under a contract for security services between Paragon and the Department of Homeland Security ("DHS"). *Id.* ¶ 4; Def.'s Mot. to Dismiss, Ex. 2, Decl. of Mike Mateer, ECF No. 4-6 [hereinafter Mateer Decl.], ¶¶ 2-3.

The following year, Paragon entered into a collective bargaining agreement (the "CBA"), effective November 8, 2013, with the Union Rights for Security Officers ("URSO").[1] Mateer Decl., Ex. A, ECF No. 4-7 [hereinafter "CBA"]. The CBA "cover[ed] . . . those security officers employed under" Paragon's contract with DHS, including the officers working at 950 L'Enfant Plaza. CBA §§ 1.1, 1.3. Under the CBA, Paragon "recognize[d] . . . [URSO] as the sole and exclusive bargaining representative for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment." *Id.* § 1.2.

Among the "other conditions of employment" dictated by the CBA is a detailed employee grievance procedure. *See id.* § 13. The procedure is "the sole and exclusive remedy for any grievance asserted by the Union or any employee." *Id.* § 13.1. As applicable here, for grievances involving suspension or termination of an employee, URSO must present the employee's

---

[1] Plaintiff named URSO as a defendant in this case, *see* Compl. at 1 and ¶ 10, but he apparently never served the union, *see* Notice of Removal, Decl. of Sherron McClain, ECF No. 1-1, ¶ 5. URSO therefore is not a defendant before the court.

grievance in writing to Paragon's Director of Labor Relations within 10 days of the adverse action. *Id.* In turn, Paragon's Director of Labor Relations has 10 days to respond in writing. *Id.* If this internal process does not produce a mutually agreeable outcome, the CBA provides for binding arbitration as the final mechanism for dispute resolution. *Id.* § 13.3.

Plaintiff asserts that he never became a member of URSO. Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 8 [hereinafter Pl.'s Opp'n], Aff. of Kwabena Amoah, ECF No. 8-1 [hereinafter Amoah Aff.], ¶ 4. He states that no one ever informed him of his union membership and that he never paid an initiation fee or dues to the union. *Id.* ¶ 5. He also never saw a copy of the CBA or met a shop steward. *Id.* ¶¶ 6-7. In short, he claims that he did not know that URSO even existed. *Id.* ¶ 15. Paragon has offered no evidence to contradict Plaintiff's assertions.

On or about October 22, 2014, Paragon suspended Plaintiff for allegedly falling asleep on the job, an accusation he steadfastly denies. Pl.'s Opp'n, Ex., ECF No. 8-2; Compl. ¶¶ 4-5. Because he was not aware of the union or the CBA, Plaintiff did not comply with Section 13.1 of the CBA by filing a grievance with Paragon's Director of Labor Relations within 10 days of his suspension. Amoah Aff. ¶¶ 9-15; Mateer Decl. ¶¶ 4-6. Instead, Plaintiff followed a different procedure set forth in an employee manual known as the "Security Officer Handbook" (the "Handbook"). Amoah Aff. ¶ 9; Reiter Decl., Ex. C, ECF No. 4-5. The Handbook permits disciplined employees to appeal in writing to Paragon's Director of Employee Relations. Reiter Decl., Ex. C, at 53. If the outcome of that review is unsatisfactory, the employee may request a hearing with Senior Management. *Id.* The Handbook, however, clearly states that: **"Employees covered by a collective bargaining agreement shall pursue their appeal in accordance with the grievance procedure outlined by the Collective Bargaining Agreement."** *Id.*; *see also id.* ("Employees *not covered by a collective bargaining agreement* who think they have been

3

discipline[d] unfairly, too harshly, or inappropriately may appeal the discipline within five working days by filing a written appeal.") (emphasis added).

As provided in the Handbook, Plaintiff appealed his suspension in writing to the Director of Employee Relations. Amoah Aff. ¶ 10. He did not receive a response, and subsequently requested a hearing with Senior Management. *Id.* ¶ 11. He never received a hearing. *Id.* ¶ 12. Only after Plaintiff was well into the appeals process did someone inform him that he was a member of URSO and subject to the grievance procedures in the CBA. *Id.* ¶ 13. By that time, however, the CBA's 10-day time period to file a grievance had expired. *Id.* ¶ 14. Paragon eventually terminated Plaintiff from his employment with the company. Compl. ¶ 3.

### B. Procedural History

About four months later, on March 7, 2015, Plaintiff filed suit against Paragon and URSO in D.C. Superior Court. *See generally* Compl. In his Complaint, Plaintiff alleged that Paragon had wrongfully terminated him and had breached its contractual promise, as set forth in the Handbook, to afford disciplined employees an appeal and hearing. *Id.* ¶ 16. Plaintiff also sought a "determination" as to whether he was covered by the CBA. *Id.* ¶ 13.[2]

On April 1, 2015, Paragon removed the suit to this court. *See* Notice of Removal. As grounds for the removal, Paragon asserted that, because Plaintiff was a member of "a bargaining unit whose terms and conditions of employment were governed" by the CBA, his state law claims were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (granting federal courts jurisdiction over disputes "for violation of contracts between an

---

[2] Plaintiff alleged that, if he was covered by the CBA, URSO breached its duty to fairly represent him in prosecuting his grievance under the terms of the CBA. *Id.* ¶ 16. But because Plaintiff never served URSO, that claim is not before the court.

employer and a labor organization representing employees"). *See* Notice of Removal, ¶¶ 8-10. Application of the LMRA thus created federal question jurisdiction in this court. *Id.* ¶¶ 11-12.

Seven days later, on April 8, 2015, Paragon filed a Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss"). *See generally* Def.'s Mot. to Dismiss. Plaintiff opposed the Motion to Dismiss, asserting that he was not required to follow the CBA's grievance procedures because he was not a part of the union. Pl.'s Opp'n ¶¶ 9, 19. Because he was not subject to the CBA, Plaintiff argued, his state law claims were not preempted by federal law and therefore removal was improper. *Id.* ¶¶ 9, 29. Plaintiff asked for a remand to D.C. Superior Court. *Id.*

## III. STANDARD OF REVIEW

Because both parties have submitted sworn affidavits and other evidence "outside the pleadings," Federal Rule of Civil Procedure 12(d) requires the court to treat Defendant's motion not as one to dismiss for failure to state a claim under Rule 12(b)(6), but as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When such a conversion occurs, as here, the court must determine whether there is any genuine issue of material fact. Fed. R. Civ. P. 56(c). A genuine dispute over a material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must review the evidence "in the light most favorable to the nonmoving party" and draw all inferences in favor of that party. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing *Anderson*, 477 U.S. at 255). The court should grant summary judgment in favor of the defendant if the plaintiff, "after adequate time for discovery," is unable to make a showing to establish an essential element of its case for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

IV. DISCUSSION

A. Whether Plaintiff Was Covered by the CBA and Its Grievance Procedures

Paragon argues that the court must enter summary judgment in its favor because Plaintiff failed to exhaust his available remedies under the CBA.[3] Plaintiff counters with one—and only one—argument: Because he was not a member of URSO, the CBA does not apply to him; therefore, he was not required to exhaust remedies under the CBA. *See* Pl.'s Opp'n ¶ 29 (asserting that "Plaintiff is not a member of the Union and in view of his employment not being subject to the CBA" summary judgment should be denied and the case remanded to D.C. Superior Court). Thus, the dispositive issue in this case is whether Plaintiff was subject to the CBA's grievance scheme.

To answer that question, the court must interpret the CBA. The question therefore is one of law. *See Flynn v. Dick Corp.*, 481 F.3d 824, 829 (D.C. Cir. 2007) (stating that interpretation of a collective bargaining agreement is a question of law). Here, the CBA plainly covered Plaintiff's *position* as a security officer with Paragon. The CBA provides that it "covers only those security officers employed under" Paragon's contract with DHS. CBA § 1.1. It further provides that the term "'Employee'" under the agreement "shall include all armed and unarmed security officer[s] employed by Paragon Systems performing guard duties . . . assigned to the following Federal facilities." *Id.* § 1.3. The CBA expressly identifies "950 L'Enfant Plaza"—Plaintiff's assigned place of work—as one of the covered locations. *Id.*

---

[3] Paragon also argues that Plaintiff's state-law claims for wrongful termination and breach of contract are preempted under Section 301 of the LMRA. Def.'s Mot. to Dismiss at 1. However, because the court finds that Plaintiff is covered by the CBA and that his claims would require the court to interpret the CBA, the court will construe Plaintiff's Complaint as asserting claims under Section 301 and need not rule on Paragon's preemption argument. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." (citation omitted)).

Plaintiff does not dispute that the CBA covers Paragon employees working under the company's contract with DHS. Nor does he debate that the location where he worked was covered under the DHS contract. Instead, he asserts that, because he was not a member of URSO, he personally was not subject to the CBA and its employee grievance provisions. *See* Pl.'s Opp'n ¶ 29. But the plain terms of the CBA do not support such a reading.

The CBA covers "only those security officers employed under" Paragon's contract with DHS. CBA § 1.1. In terms of coverage, it makes no distinction between union and nonunion employees. *Id.* Indeed, the CBA defines a covered "Employee" as one who is "*performing* guard duties" as of the effective date of the CBA, irrespective of whether is he a union or nonunion employee. *Id.* § 1.3 (emphasis added). Moreover, in the CBA, Paragon agreed that it would not negotiate different terms of employment with non-union employees. Paragon recognized URSO as the "*sole and exclusive bargaining representative* for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment, for the employees of the Company[.]" *Id.* § 1.2 (emphasis added). The "other conditions of employment" included the grievance and arbitration process. *Id.* §§ 13.1, 13.3. Thus, when Paragon entered into the CBA, it agreed that for *all* covered employees it would follow the CBA's grievance procedures and no other policy, including those contained in the Handbook.

The conclusion that the CBA's grievance process applied to Plaintiff, notwithstanding his status as a nonunion employee, is reinforced by relevant case law. Our Court of Appeals appears not to have addressed the question whether a nonunion employee must follow a CBA's grievance process. However, one other federal appellate court has directly addressed the issue and others have provided helpful guidance.

7

In *Quesnel v. Prudential Insurance Co.*, 66 F.3d 8 (1st Cir. 1995), the First Circuit held that a CBA that "encompass[ed] 'all District Agents employed or hereafter to be employed'" by the defendant company required the plaintiff to follow the CBA's grievance and arbitration procedures, even though he claimed not to be a member of the union. *Id.* at 11. The court found that, "regardless of the fact that [the plaintiff] was not a Union member, he is a member of the bargaining unit for whose benefit the CBA was created." *Id.* The First Circuit explained that, because "[t]he Union was and is obligated under § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), to represent the interests of *all* employees in collective bargaining, including nonmembers," "the fact that [the plaintiff] is not a Union member does not remove him from the bargaining unit for whose benefit the CBA was created." *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). Thus, the court concluded, "[t]he grievance procedures set forth in the CBA is exclusive of other dispute resolution mechanisms." *Id.*; *see also Bhatnagar v. Medco Health, LLC*, 958 F. Supp. 2d 1183, 1187 (D. Nev. 2013) (following *Quesnel* and holding that "non-union members of a bargaining unit are covered by a collective bargaining agreement in the context of a non-union employee asserting that he is not covered").

Two other circuit court decisions are instructive. In *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154 (10th Cir. 1991), the plaintiff argued, as Plaintiff does here, that because he was not a member of the union, the CBA did not apply to him. *Id.* at 1156. The Tenth Circuit concluded that "[u]nion membership . . . is irrelevant to the applicability of a collective bargaining agreement. Rather, an individual employed in a craft governed by a collective bargaining agreement is bound by the terms of the agreement regardless of union membership." *Id.* (citations omitted). "Plaintiff, therefore, was bound by the terms of the collective bargaining agreement as a member of the

applicable bargaining unit." *Id.* The court therefore concluded that his state-law claims were preempted by Section 301. *Id.*

In *Baker v. Amsted Industries, Inc.*, 656 F.2d 1245 (7th Cir. 1981), a group of employees sued their union for failing to pursue a pension dispute. *Id.* at 1248. In analyzing whether the union had breached its duty of fair representation, the court made several observations that are pertinent here. The court explained that, under Section 9(a) of the National Labor Relations Act, "a union designated by a majority of employees in an appropriate unit 'shall be the exclusive representative of all employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.'" *Id.* (quoting 29 U.S.C. § 159(a) (1976)). Thus, under Section 9(a), the court observed, "[e]ven employees who may have preferred a different [collective bargaining] representative, or *none at all*, are bound by the choice of a majority of their fellow workers." *Id.* (emphasis added) (citation omitted). The court further observed that, "terms and conditions of employment can be arranged only by the majority representative, and the rules written into the collective bargaining agreement become the law of the plant for all employees." *Id.* at 1249. In other words, once a majority of employees has elected a bargaining representative, all employees—even nonunion workers—are bound by the terms of the agreement that the representative negotiates.

Plaintiff offers no response to *Quesnel*, *Saunders* or *Banker*—indeed, his Opposition cites no case law at all. Nor does Plaintiff suggest an alternative interpretation of the CBA. Instead, he simply argues that, as a factual matter, he was not a member of URSO. But as the court stated in *Quesnel*, "[w]hether [the plaintiff] is subject to the CBA is . . . a question of law, not of fact." 66 F.3d at 11. Thus, whether the facts ultimately would show Plaintiff was a member (or not) of URSO is irrelevant. Either way, he would be bound by the CBA's grievance procedures.

### B. Plaintiff Failed to Exhaust Remedies Under the CBA

Having determined that Plaintiff was subject to the CBA and thus required to follow its grievance process, resolving Paragon's dispositive motion becomes straightforward. Plaintiff failed to exhaust his administrative remedies and thus the court must dismiss his claims.

In *Vaca v. Sipes*, the Supreme Court held:

> [I]f the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. *For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement.*

386 U.S. at 184 (emphasis added) (citation omitted). It is undisputed that Plaintiff did not at any point present his grievance to Paragon's Director of Labor Relations, as required by § 13.1 of the CBA. Amoah Aff. ¶ 10 (stating that he appealed only to "Human Resources, ATTN: Employee Relations"); Mateer Decl. ¶¶ 4-6 (stating that, as Program Manager, he was the person designated to receive grievances under the CBA, but he has no record of a grievance filed by Plaintiff). Therefore, because Plaintiff failed to exhaust the remedies available to him under the CBA, judgment must be entered in favor of Paragon.[4] *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-21 (1985) (holding that, where claims were preempted by Section 301, the "complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement, or dismissed as pre-empted by § 301") (citation omitted).

---

[4] To be clear, the court also rejects any suggestion that the Handbook created an alternative grievance path. The Handbook clearly states that: "**Employees covered by collective bargaining agreement shall pursue their appeal in accordance with the grievance procedure outlined by the Collective Bargaining Agreement.**" Reiter Decl., Ex. C, at 53. Thus, the appeals process set forth in the Handbook was not available to Amoah, and Paragon was under no obligation to follow it. To the contrary, Paragon was contractually bound to follow the bargained-for grievance process outlined in the CBA.

\*      \*      \*

Before concluding, the court pauses to observe that Plaintiff did not raise anywhere in his opposition papers an arguably applicable exception to the exhaustion requirement. In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983), the Supreme Court observed that "[o]rdinarily . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *Id.* at 163 (citation omitted.) The Court noted, however, that "this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164. "In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* The Court stated, however, that for the exception to apply, it is not essential that the employer sue both the employer and the union. *Id.* at 165. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.*

Here, Plaintiff's Complaint asserts facts that arguably meet the exception to the exhaustion requirement recognized in *DelCostello*. The Complaint alleges that: "Plaintiff attempted to contact the Defendant Union, but to no avail. In fact, the Defendant Union representative hung the telephone up on the Plaintiff while he was attempting to obtain information." Compl. ¶ 11. It also avers that "if the Plaintiff was a member of the Defendant Union then the Defendant failed to provide services to the Plaintiff when he was improperly discharged by the Defendant Paragon." *Id.* ¶ 12. Finally, the Complaint alleges that, "if the Plaintiff was to be represented by the Defendant Union, then [his] losses are also directly attributable to the Union's failure to undertake and/or to pursue the appeal process to which the Plaintiff was entitled." *Id.* ¶ 16.

Despite these allegations, Plaintiff does not argue that he was excused from the exhaustion requirement because the union refused to represent him. He cites neither *DelCostello* nor any case for that matter in his opposition brief. Nor does Plaintiff's sworn affidavit offer any facts that would support applying the *DelCostello* exception. Although the Complaint alleges that the union failed to represent him, the affidavit contains no *facts* to support such assertion. Instead, it focuses exclusively on establishing that Plaintiff was not a member of the union, which the court has assumed to be true.

The court finds it difficult to understand why Plaintiff's counsel did not raise the *DelCostello* exception when, based on the face of the Complaint, the exception might have offered Plaintiff a safety valve from the bar created by his clear failure to exhaust. Ultimately, however, "[t]he court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter" those made in the motion for summary judgment. *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002); *see also Texas v. United States*, 798 F.3d 1108, 1115 (D.C. Cir. 2015) (agreeing that the court has "no obligation to 'perform . . . legal research for the opposing party'") (quoting *Stanciel v. Gramley*, 267 F.3d 575, 578 (7th Cir. 2001)). Because Plaintiff completely failed to raise the *DelCostello* exception, the court does not consider it. *See N. Am. Catholic Educ. Programming Found., Inc. v. Womble Carlyle Sandridge & Rice, PLLC*, 800 F. Supp. 2d 239, 250-51 (D.D.C. 2011) ("[I]n only arguing that it would have succeeded in the Circuit based on the two aforementioned arguments, plaintiff barred itself from arguing that the Circuit would have granted relief on any other grounds. Because the Court has dismissed the only arguments plaintiff brought in opposition to defendants' motion to dismiss, the Court will treat as conceded all other arguments.").

IV. CONCLUSION

For the foregoing reasons, the court grants Defendant Paragon Systems, Inc.'s Motion for Summary Judgment. A separate Order accompanies this Memorandum Opinion.

Dated: February 2, 2016

                                                    Amit P. Mehta
                                                    United States District Judge